William W. Sutton sued his employer, River Gas Corporation, seeking workers' compensation benefits for injuries he sustained in an automobile accident that occurred on May 25, 1993, during the course of his employment. On June 29, 1994, the parties petitioned the trial court for approval of a settlement agreement that had been reached, which called for a lump-sum payment to Sutton of $18,227.34 on his workers' compensation claim; that same day, the court entered an order approving the settlement agreement. The court, on July 5, 1994, after being advised that Sutton had instituted a third-party action as a result of the injuries he had sustained in the automobile accident, amended its order approving the settlement agreement in order to retain jurisdiction over any further proceedings with regard to River Gas's subrogation rights against any potential recovery by Sutton in his third-party action.
Subsequently, Sutton obtained a $175,000 lump-sum settlement from Home Insurance Company, River Gas's uninsured/underinsured motorist carrier. The parties filed a joint stipulation of facts with the court, stipulating that River Gas had a $55,016.24 subrogation lien, consisting of payments of $27,492.85 for Sutton's medical expenses; $9,296.05 in temporary total disability benefits; and the $18,227.34 lump-sum workers' compensation settlement payment. On May 23, 1996, the court entered an order stating:
 "This cause came to be heard on the reserved issue of [River Gas's] right to subrogation, from a settlement by [Sutton] with Home Insurance Co. The issue was submitted upon a stipulation of facts. The factual issue before the court is whether or not [Sutton] has been fully compensated for his injuries, so as to allow subrogation from the settlement by the workman's compensation carrier. The burden of proof is on [River Gas] to prove [Sutton] is fully compensated for his injuries. One significant item of damage would be future loss of earnings or earning capacity. There is no evidence before the court whether [Sutton] returned to work at the same wages or whether he was able to work at all. If he was unable to work, his future loss [of] earnings by themselves could exceed $175,000.00. There is no evidence of [Sutton's] age so as to determine his life expectancy. There is no evidence of the extent or residual effects of the disc herniations. [River Gas] having failed to meet its burden of proof, on the subrogation issue, the court finds that [River Gas] should not be allowed to recoup the funds it expended."
River Gas appeals.
Sutton had sustained injuries to his neck and shoulder in the automobile accident. River Gas, through its workers' compensation insurance carrier, Lumberman's Underwriting Alliance, paid Sutton's medical expenses and temporary total disability benefits, and settled the workers' compensation claim for a lump-sum payment.
Sutton sued the third-party tortfeasor that had caused the accident. The tortfeasor had automobile liability insurance with liability limits of $25,000. Sutton also made a claim against Home Insurance for underinsured motorist benefits. Home Insurance paid to Sutton $150,000 in underinsured motorist benefits in order to settle the claim against it. At the time of the settlement between Sutton and Home Insurance, the claim against the tortfeasor was still unresolved; therefore, in order for Home Insurance to preserve its subrogation rights against the tortfeasor, it was required to tender to Sutton an additional $25,000, which represented *Page 37 
the liability limits available to the tortfeasor. Sutton obtained from Home Insurance a total settlement of $175,000 on his third-party claim.
On appeal, River Gas argues that the court erred in requiring it to prove that Sutton had been fully compensated for his injuries and that, under § 25-5-11(a), Ala. Code 1975, it had a statutory right of subrogation against the third-party settlement, regardless of whether Sutton had been fully compensated for his injuries. Sutton argues that River Gas's right to subrogation, pursuant to § 25-5-11(a), is conditioned upon proof by River Gas that he had received a double recovery or had been fully compensated for his injuries. Section25-5-11(a), Ala. Code 1975, as amended, states in pertinent part:
 "(a) If the injury or death for which compensation is payable under Articles 3 or 4 of this chapter was caused under circumstances also creating a legal liability for damages on the part of any party other than the employer, whether or not the party is subject to this chapter, the employee, or his or her dependents in case of death, may proceed against the employer to recover compensation under this chapter or may agree with the employer upon the compensation payable under this chapter, and at the same time, may bring an action against the other party to recover damages for the injury or death, and the amount of damages shall be ascertained and determined without regard to this chapter. . . . If the injured employee, or in case of death, his or her dependents, recovers damages against the other party, the amount of the damages recovered and collected shall be credited upon the liability of the employer for compensation. If the damages recovered and collected are in excess of the compensation payable under this chapter, there shall be no further liability on the employer to pay compensation on account of the injury or death. To the extent of the recovery of damages against the other party, the employer shall be entitled to reimbursement for the amount of compensation theretofore paid on account of injury or death. . . . For purposes of this amendatory act, the employer shall be entitled to subrogation for medical and vocational benefits expended by the employer on behalf of the employee. . . ."
In Holder v. Weatherly, 456 So.2d 812 (Ala.Civ.App. 1984), an employee, while in the line and scope of his employment, was killed in an automobile accident involving an uninsured motorist. The employer paid workers' compensation benefits to the employee's widow. The employee's estate also recovered damages in a tort action arising out of the automobile accident against the third-party tortfeasor and further damages from the employer's uninsured motorist coverage. The employer sought to credit the uninsured motorist coverage award against the workers' compensation benefits that it had paid. Id. This court held:
 " In order to obtain any 'credit' under the facts of this case, there must clearly be some sort of double recovery, i.e., a recovery from two sources that exceeds damages.
 "In the present case, no proof was offered of the employee's damages. For this reason, it cannot be asserted that the employee's estate was awarded a double recovery. Therefore, the trial court did not err in disallowing a credit of the uninsured motorist coverage award against the workmen's compensation benefits."
Id., at 814.
Similarly, in Jackson v. Weaver, 516 So.2d 702
(Ala.Civ.App. 1987), an employee, during the course of his employment, was involved in an automobile accident. The employee was awarded workers' compensation benefits and the employer was assessed a statutory penalty because it had failed to secure workers' compensation insurance coverage for the employee. Also, as a result of the accident, the employee received proceeds from uninsured motorist coverage and medical benefits insurance policies. On appeal, the employer argued that the trial court had erred in failing to give it a set-off or credit as to all sums that the employee had received. Id. In denying the employer a set-off or credit, this court stated:
 "This court has held that, for the employer to obtain the credit provided for by *Page 38 
§ 25-5-11(a), 'there must clearly be some sort of double recovery, i.e., a recovery from two sources that exceeds damages.' Holder v. Weatherly, 456 So.2d 812, 814 (Ala.Civ.App. 1984). Where, however, no proof is given of the employee's damages, the employer cannot contend that there has been a double recovery. Holder, 456 So.2d at 814.
 "In the present suit for workmen's compensation, there has been no proof of the damages suffered by the employee and hence no evidence that the employee has enjoyed a double recovery. Based upon Holder, we find no error on the part of the trial court in refusing to grant [Employer] a set-off as to the amounts the employee received under uninsured motorist and medical benefits insurance policies."
Id., at 706.
Our supreme court, in Maryland Casualty Co. v. Tiffin,537 So.2d 469 (Ala. 1988), considered whether a workers' compensation insurance carrier was entitled to a full reimbursement of previously paid compensation benefits under §25-5-11(a), when a deceased employee's family had recovered damages from a third-party in excess of the amount of compensation paid by the carrier. The court rejected the holdings in Holder, supra, and Jackson, supra, stating:
 "We do not agree that § 25-5-11(a) permits an employer to be reimbursed for sums paid under the Workmen's Compensation Act only when an employee, or his dependents in case of his death, has recovered from two sources an amount that exceeds the employee's damages. Clearly, the words of § 25-5-11(a) do not limit an employer's recovery in such a way. The Legislature has the power to enact legislation to adopt the policy that . . . the Court of Civil Appeals has adopted. We do not. We must interpret § 25-5-11(a), as it is written, not as we may wish that it were written."
Tiffin, supra, at 474. In Powell v. Blue Cross Blue Shield ofAlabama, 581 So.2d 772 (Ala. 1990), an automobile accident victim's insurer paid for the victim's medical expenses that she had incurred as a result of the accident. Following a settlement between the victim and the third-party tortfeasor, the insurer moved to intervene, seeking subrogation for the amount it had paid for the victim's medical expenses. Our supreme court held that an "insurer is not entitled to subrogation unless and until the insured has been made whole for his loss." Id., at 777 (emphasis in original). Powell did not involve the payment of workers' compensation benefits.Powell specifically stated:
 "We note that any reimbursement for compensation paid to an injured plaintiff under the Alabama Workmen's Compensation Act, Ala. Code 1975, § 25-5-1
et seq. (hereinafter the 'Act'), by an employer or its insurer is specifically governed by § 25-5-11(a). Our holding in this case in no way interferes with the legislatively mandated scheme provided for under the Act."
Id., at 779, footnote 8.
Based on the supreme court's holdings in Tiffin and Powell, we conclude that the trial court erred in requiring River Gas to prove that Sutton had been fully compensated for his injuries before allowing subrogation on behalf of River Gas from the settlement proceeds of the third-party action. Section25-5-11(a), Ala. Code 1975, does not require River Gas to prove that Sutton had been fully compensated, or would enjoy a double recovery, in order for its subrogation rights to arise under that section of the Workers' Compensation Act.
River Gas next contends that it was entitled to subrogation against the $150,000 paid by Home Insurance to Sutton in settlement of his claim for underinsured motorist benefits. InBunkley v. Bunkley Air Conditioning, Inc., 688 So.2d 827
(Ala.Civ.App. 1996), an employee, during the line and scope of his employment, was injured in an automobile accident. The trial court entered an order approving a lump-sum payment of accrued workers' compensation benefits to the employee. Thereafter, the employer amended its original answer, alleging that, pursuant to § 25-5-11(a), it was entitled to a credit for the monies the employee had recovered in settling claims for uninsured motorist benefits under provisions of both the employer's *Page 39 
and the employee's automobile insurance policies. The trial court entered an order entitling the employer to a credit of the monies recovered by the employee from the settlement of the claims for uninsured motorist benefits against future workers' compensation due. Id. On appeal, this court held that the "trial court erred in crediting [the employee's] recoveries and collection of uninsured motorist benefits against the future workmen's compensation benefits owed to [the employee]." Id., at 832. Following a thorough review of the history of the case law that has interpreted § 25-5-11(a), Presiding Judge Robertson, writing for this court, stated:
 "The foregoing case law leads us to conclude that our Supreme Court has interpreted the subrogation and credit provisions of § 25-5-11 and its predecessors to apply to the proceeds of judgments recovered and collected against a 'third-party wrongdoer,' where such third-party wrongdoer is the person or persons whose wrongful act proximately caused the worker's injuries. It follows that subrogation under § 25-5-11 does not extend to the recovery of damages under contracts of insurance that are separate and apart from the wrongful conduct that injures the worker.
 "In this case, both [the employee's] personal automobile insurance company and [the employer's] automobile insurance company were liable as a result of the uninsured motorist coverage afforded to [the employee]. The insurance companies' liability to pay damages to [the employee] did not arise out of the negligent conduct of the driver that injured [the employee]; their liability for damages arose out of the breach of the insurance contracts."
Id., at 831-32. See also State Farm Mutual Automobile Ins. Co.v. Cahoon, 287 Ala. 462, 252 So.2d 619 (1971). Accordingly, River Gas is not entitled to subrogation of the $150,000 of underinsured motorist benefits that Sutton received from Home Insurance, because Home Insurance was not the "third-party wrongdoer" that caused Sutton's injuries. The underinsured motorist benefits that Home Insurance paid to Sutton were paid as a result of the underinsured motorist coverage afforded Sutton through River Gas's automobile insurance policy; Home Insurance's liability did not arise out of the negligent conduct of the "third-party wrongdoer" that injured Sutton.Bunkley, supra.
River Gas next contends that it is entitled to subrogation of the $25,000 tendered by Home Insurance to Sutton, which represented the liability limits applicable to the tortfeasor in the third-party claim. In order for Home Insurance to preserve its subrogation rights against the tortfeasor, it was required by law to pay to Sutton $25,000 — the tortfeasor's liability limits on her personal automobile insurance. SeeLambert v. State Farm Mutual Automobile Ins. Co., 576 So.2d 160
(Ala. 1991). Home Insurance was otherwise not liable to Sutton for the $25,000; Sutton's right to those monies arose from the tortfeasor's wrongful conduct that injured him. Home Insurance's payment of the $25,000 to Sutton has the same effect as a payment to Sutton by the tortfeasor or the tortfeasor's liability carrier. The $25,000, in fact, represents proceeds recovered from a "third-party wrongdoer," which arose from a contract of insurance that was not separate and apart from the wrongful conduct that injured Sutton.Bunkley, supra. We, therefore, conclude that River Gas is entitled to subrogation against the $25,000 liability limits paid to Sutton, less attorney fees owed by River Gas to Sutton's attorney for his services in the third-party action against the tortfeasor.
Accordingly, the judgment is affirmed in part, and reversed in part, and the case is remanded for the trial court to enter an order consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
ROBERTSON, P.J., and MONROE, CRAWLEY, and THOMPSON, JJ., concur. *Page 40